UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 21-CR-145 (JDB) |
| LUIS MIGUEL TEIXEIRA-SPENCER, : | |
| and OLATUNJI DAWODU, : | |
| : | |
| Defendants. : | |

## SUPPLEMENT TO GOVERNMENT'S MEMORANDUM
## FOR PRETRIAL DETENTION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplement to its memorandum in support of its motion for pretrial detention of Defendants Luis Spencer and Olatunji Dawodu.

A. <u>Additional Information Regarding Defendant Dawodu's Risk of Flight and Role in Conspiracy</u>

In addition to the approximately 1,400 grams of pills containing suspected fentanyl (consistent with pills ordered through the darknet markets) and mailing envelopes recovered during the search of Defendant Dawodu's residence, law enforcement also recovered false identification from the dresser in his bedroom. A photograph of the ID card is included below:



Law enforcement has searched databases and there is no record for an individual with a name of

"Jason Richmond." Defendant Dawodu's access to false identification cards underscores the risk of flight he poses in this case and provides further support for the government's request for detention in this case.

As the government previously noted, individuals using the darknet have ready access to false identification materials and the actual seizure of such fraudulent materials demonstrates the real risk were Defendant Dawodu to be released and try to avoid the 10 year mandatory minimum sentences he faces *in each of his two pending cases* [21-CR-145(JDB) and 21-CR-163(JDB)]. The defendant's possession of false identification documents directly rebuts the defendant's argument that "that there is no direct evidence of Mr. Dawodu … possessing the ability to conceal assets or conceal his whereabouts." (Dawodu Opp. ¶ 5d). Additionally, Defendant Dawodu also states that "[t]here is no direct evidence of Mr. Dawodu accessing the darknet, engaging in cryptocurrency transactions, owning any cryptocurrency," but there is in fact evidence of Defendant Spencer sending bitcoin addresses to Defendant Dawodu in iCloud messages.[1]

Although Defendant describes his "role in the alleged drug distribution conspiracy" as "minimal compared to other participants" (Dawodu Opp. ¶ 4c), the facts in no way so support that characterization of that evidence. Notably, more than 1,400 grams of pills containing suspected fentanyl were recovered in his bedroom and a closet immediately adjacent to the bedroom (described by the defendant as "a small efficiency where he paid $1,000 per month in rent" Dawodu Opp. ¶ 5e). A typical pill seized during this investigation weighs approximately

---

[1] During the searches of Spencer and Ogando's residences, a number of bitcoin wallets and devices for storing cryptocurrency were recovered. Devices recovered from the searches are still being reviewed.

.11118 grams, thus 1,400 grams of pills represents approximately 12,590 pills.[2] At a retail price of approximately $15/pill, the pills recovered from the defendant's bedroom would be a value of more than $180,000. Notably, that quantity of pills represents only what was recovered during the search warrant, and does not capture the pills sold over the course of johncarter7 and PolarSprings sites operating over a course of years – in addition to the direct deals that Defendant Dawodu was doing with the Confidential Human Source in this case (outside of the transactions occurring on the markets).

Additionally, although Defendant Dawodu was directly dropping packages for johncarter7 and shipping pills directly to customers (including a confidential human source), he was also directing other members of the conspiracy below him in the PolarSprings conspiracy to mail packages. See Case No. 21-CR-163, No. 1 (Indictment) ¶¶ 10(d), 16-18. Those directions to the co-conspirator evidenced Defendant Dawodu's operations security, ensuring that the packages were being mailed out of different locations to prevent law enforcement's ability to identify any pattern that would assist in identifying the individual or individuals who were shipping the packages. Finally, messages on Dawodu's iCloud (sent using a messaging application) discussed pill press operations and payment information; in other messages, as well as USPS labels and payment information.

B. Additional Connections Between Defendant Spencer and Johncarter7

Defendant Spencer – at the detention hearing in Ft. Lauderdale and in his Memo in Support of Upholding Bail Order from the Southern District of Florida – noted that he was never observed dropping packages of drugs at post offices and did not sell drugs directly to any

---

[2] The pills seized from Dawodu's residence have been submitted to the DEA lab for testing; the final weight and count of pills has not yet been received.

purchasers (in contrast to his codefendant). However, the evidence establishes Defendant Spencer's role in the conspiracy wherein he could rely on other members of the conspiracy to mail the narcotics, distancing himself from the illegal activity. His role in the conspiracy, however, was an integral role in the conspiracy, including:

- User attribution evidence connects Defendant Spencer to the email address embedded in the Pretty Good Privacy (PGP) public key on Johncarter7's Dream, Wall Street, and Empire pages (connecting Defendant Spencer to the means by which customers on the markets could communicate with johncarter7);

- In 2016, Spencer purchased bitcoin to pay for orders of at least 610 grams of furanylfentanyl on Alphabay; searches observed within the email account embedded in the PGP key (connected to Spencer) reflect searches for fentanyl analogues close in time to a number of these purchases;

- Defendant Spencer was identified by a witness with whom he traded bitcoin for cash. The bitcoin trader had met Spencer in person on a number of occasions and to conduct transactions. The two had originally made contact on Localbitcoins.com, a cryptocurrency exchange, where Spencer was using the name "johncarter777." The bitcoin trader also had communicated with Spencer on Telegram, an encrypted application, and had saved the contact for Spencer as "LBC Johncarter777." Defendant Spencer began conducting transactions directly with the trader off of the cryptocurrency exchange, further limiting law enforcement's visibility into his cryptocurrency transactions;

- Defendant Spencer frequently met with Defendant Dawodu at a storage unit in Florida and was observed on surveillance footage carrying packages in and out of the storage unit;

- Defendant Spencer and Defendant Dawodu were in frequent telephonic communication, and on multiple occasions Defendant Spencer sent bitcoin wallet addresses to Defendant Dawodu;

- Records from Coinbase, another virtual currency exchange, reveal proceeds from johncarter7 were used to process a payment to Expedia to reserve a hotel room in Ft. Lauderdale from May 27-May 29, 2017. Records from Expedia indicate the reservation was paid for in Bitcoin and was made in Luis Spencer's name and included his phone number and email address;

- Law enforcement was able to trace payments related to direct pill purchases from johncarter7 using the Jabber messaging application to an account at Binance

- connected to Spencer (and the Binance account was accessed numerous times from an IP address in Spencer's name, at Spencer's residence);

- A review of Spencer's IP address records at his residences during the course of the investigation show connections to the Tor network (darknet markets must be accessed through the Tor browser). Records from Spencer's Dania Beach address also show connections to the Jabber server (a Japanese server, XMPP.JP), during the period of time when johncarter7 was directing customers to contact the vendor directly via Jabber; this is the same communication server that was used by johncarter7 to conduct direct purchases with undercover agents; and

- Recovery of numerous wallets and ledgers during search warrant at Spencer's residence.[3]

All of this evidence must be viewed not in isolation – but in connection with the evidence related to the overall conspiracy, as detailed in the indictment. Although Defendant Spencer argued at the detention hearing that the cryptocurrency accounts and other accounts could have been accessed by other individuals, that argument is inconsistent with Defendant Spencer's directive to his girlfriend to "get rid of" the laptop that had been missed during the search of his residence earlier in the day (if Defendant Spencer had no involvement in the offenses described above, the laptop would not contain evidence that would need to be destroyed or concealed).

---

[3] Although Defendant Spencer has not been charged in the conspiracy with Defendant Ogando, law enforcement continues to investigate their connections (for instance, in December of 2019, Defendant Spencer sent a bitcoin address to Defendant Ogando and later that day, the bitcoin address received approximately $17,400). Additionally, on September 7, 2020, Spencer sent a bitcoin address to PolarSprings. On the same day, a PolarSprings wallet sent approximately $21,000 in bitcoin to the address.

WHEREFORE, the Government requests that the Court order the defendants to be detained without bond pending resolution of this case.

                                                            Respectfully submitted,

                                                            CHANNING D. PHILLIPS
                                                            United States Attorney
                                                            D.C. Bar No. 415793

By:                /s/
                                                            LAURA CRANE
                                                           DC Bar No. 992454
                                                           RACHEL FLETCHER
                                                           Texas Bar No. 24078505
                                                           Assistant United States Attorneys
                                                           555 4th Street, N.W.
                                                           Washington, D.C. 20001
                                                           (202) 252-7667 (Crane)
                                                           (202)252-7093 (Fletcher)
                                                           Laura.crane@usdoj.gov
                                                           Rachel.Fletcher@usdoj.gov